UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                              No. 00-4410

LINDA GADDY CHATMON,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CR-99-291)

Submitted: February 28, 2001

Decided: March 26, 2001

Before WILKINS, MOTZ, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Timothy J. Sullivan, SULLIVAN & SULLIVAN, College Park,
Maryland, for Appellant. Lynne A. Battaglia, United States Attorney,
Rod J. Rosenstein, Assistant United States Attorney, David I. Salem,
Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Linda Gaddy Chatmon was convicted by a jury of wire fraud, 18 U.S.C. § 1343 (1994), mail fraud, 18 U.S.C. § 1341 (1994), and bribery concerning programs receiving federal funds, 18 U.S.C. § 666 (1994). She appeals the sentence of eighteen months imprisonment imposed by the district court, contending that the district court erred in enhancing her offense level for a loss over $120,000 under *U.S. Sentencing Guidelines Manual* § 2F1.1 (1998), and clearly erred in finding that the offenses involved more than minimal planning. USSG §§ 1B1.1, comment. (n.1(f)), 2F1.1(b)(2)(A). We affirm.

Chatmon's company, Power Associates, Inc., provided employment training for welfare recipients during 1997 and 1998. Initially, Chatmon provided the service on her own, while she sought funding from Prince George's County, Maryland. In February 1998, Power Associates obtained a contract from Prince George's County for employment training; the contract expired in August 1998 and was not renewed. Chatmon also provided child care at her facility for the children of the trainees, but was never able to obtain funding for this service because she did not have a license to operate a daycare facility.

In November 1997, Chatmon contacted Express Business Funding, Inc. (EBF), a Florida company that purchased accounts receivables from small or growing companies at a discount for cash. Chatmon entered into a contract with EBF and on two occasions in mid-December 1997 she faxed to EBF a purported invoice from her company, Power Associates, to Prince George's County for child care services supposedly rendered in October, November, and December 1997. For each invoice, EBF faxed a "Notice of Assignment" to the Department of Social Services of Prince George's County.

Chatmon had previously secured the cooperation of Angela George, an employee in the Prince George's County Department of Social Services. George signed each Notice of Assignment and returned it to EBF, thereby indicating falsely that Chatmon had provided child care services and that Prince George's County owed her

the amount of money shown on the invoices. Each time, EBF sent Chatmon a check. The total amount of both checks was $133,396.95. Late in December 1997, Chatmon rewarded George by giving her an envelope containing $5000 in cash. George took the money, but when Chatmon produced more invoices, George refused to sign them.

When EBF did not receive payment from Prince George's County, EBF personnel contacted George and Chatmon. Both women assured EBF that the money would be paid, and Chatmon asked them not to call Prince George's County about the money because it might hurt her chances of getting a two million dollar contract with the county. EBF agreed not to call the county. Chatmon then sent a letter to EBF making the same representations. During this period, Chatmon wired $15,000 to EBF. Eventually, EBF learned that Chatmon did not have a contract with Prince George's County for daycare services. The company's total out-of-pocket loss was $115,000.

At sentencing, the district court calculated Chatmon's offense level by using the intended loss of $133,396. Chatmon's attorney agreed that that figure represented the intended loss, but argued that the actual loss should be used to determine the sentence.

Application Note 8 to § 2F1.1 states that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." On appeal, Chatmon relies on *United States v. Ruhe*, 191 F.3d 376, 391 (4th Cir. 1999), which states that, "[t]he general rule is that loss is determined by measuring the harm to the victim." However, *Ruhe* is not helpful to Chatmon because the issue in that case was the valuation of stolen goods, i.e., whether the district court had put the correct dollar figure on the intended loss to the victim. We find that the district court did not err in finding that the intended loss was more than $120,000 and using that amount to determine the offense level under § 2F1.1(b)(1)(H).

The court also found that the offense involved more than minimal planning. USSG § 2F1.1(b)(2)(A). "More than minimal planning" is defined in USSG § 1B1.1, comment. (n.1(f)), as "more planning than is typical for commission of the offense in a simple form." Affirmative steps to conceal the offense also constitute more than minimal planning. *Id.* Moreover, more than minimal planning "is deemed pres-

ent in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." *Id.*

Chatmon argues that each of her offenses—mail fraud, wire fraud, and bribery—was a typical crime of that nature, and involved minimal planning, but nothing more. Because Chatmon initiated the contract with EBF on false pretenses, submitted false invoices to EBF, secured the help of Angela George to support her fraudulent representations, bribed George and asked her to sign more false invoices, we find that Chatmon's unlawful conduct consisted of repeated acts which were not purely opportune. Therefore, the district court did not clearly err in finding that the offense involved more than minimal planning.

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*